IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LUZ STELLA TALERO,

        Petitioner,

v.                                Civil Action No. 1:11cv169
                                 (Judge Keeley)

TERRY O'BRIEN, Warden

        Respondent.

## REPORT AND RECOMMENDATION

On September 19, 2011, the petitioner, Luz Stella Talero, an inmate confined in the Secure Female Facility at Bruceton Mills, West Virginia ("SFF Hazelton"), filed a motion for relief concerning implementation of her sentence in the United States District Court for the Eastern District of Texas. Because the Magistrate Judge assigned to the matter determined that the petition raised issues properly brought pursuant to 28 U.S.C. § 2241, he entered an order on September 23, 2011, transferring the case to this court. The transfer was completed on October 18, 2011, and on that same date, the Clerk of Court sent the petitioner a Notice of Deficient Pleading. On November 7, 2011, the petitioner paid the $5.00 filing fee, and on January 9, 2012, the petitioner filed her § 2241 petition on this court's approved form. Upon a preliminary review of the form petition, the undersigned found that summary dismissal was not warranted at that time and the respondent was directed to file a response to the petition. On February 6, 2012, the respondent filed a Motion to Dismiss or for Summary Judgment and Response. Because the petitioner is proceeding *pro se*, a Roseboro Notice was issued on February 8, 2012. To date, the petitioner has failed to file a reply.

### I. Statutory Background

In 18 U.S.C. §§ 3621-3625, Congress vested the BOP with broad authority to manage the imprisonment of a convicted person, and specified "[t]he Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). In § 3621(e), Congress articulated a specific statutory mandate for residential substance abuse treatment programs for eligible prisoners. The program the BOP created to satisfy this mandate is the Residential Drug Abuse Program ("RDAP").

The RDAP is composed of three components. The first component is the residential unit-based component. See 28 C.F.R. § 550.56. This component is comprised of a course of individual and group activities provided by a team of drug abuse treatment specialists and the Drug Abuse Program Coordinator in a treatment unit set apart from the general population. Id. The residential unit-based component of the treatment program lasts a minimum of 500 hours, over a six to twelve-month-period. Id. Upon successful completion of the residential unit-based component, and if time permits between completion of the unit-based component and transfer to a community-based program, inmates enter component two, and must participate in the follow-up services to the unit-based component of RDAP. See 28 C.F.R. § 550.56; 28 C.F.R. § 550.59. During this second component, inmates are given counseling support while they transition back into general population at the facility. See 28 C.F.R. § 550.59. The final component of the RDAP is the Community Transitional Drug Abuse Treatment ("TDAT") component. See 28 C.F.R. § 550.56; 28 C.F.R. § 550.59. Inmates who have completed the unit-based program and (when appropriate) the follow-up treatment and are transferred to community confinement must successfully complete community-based drug abuse treatment in a community-based program. Id. In this final phase, inmates participate in drug treatment programs and receive counseling support in a community-based

program to facilitate transition back into their respective communities. Id.. Successful completion of the RDAP requires successful completion of the both the unit-based program and the TDAT component. See 28 C.F.R. § 550.59.

An inmate is eligible to participate in the RDAP if he is "determined by the Bureau of Prisons to have a substance abuse problem," and is "willing to participate in a residential substance abuse treatment program." 18 U.S.C. § 3621(e)(5)(B)(i) and (ii). Participation in the RDAP is strictly voluntary and decisions on placement are made by the drug abuse treatment coordinator. See 28 C.F.R. § 550.56. However, to encourage inmates to participate in the program, the BOP offers a number of incentives to inmates, including financial awards, consideration for the maximum period of time at a community-based treatment program, and local institutional incentives, such as preferred living quarters. See 28 C.F.R. § 550.57. As a further incentive for the successful completion of the RDAP, the BOP may, in its discretion, reduce an inmate's sentence by up to one year. See 18 U.S. C. § 3621(e)(2); see also Lopez v. Davis, 531 U.S. 230 (2001). However, not all federal prisoners who participate in drug treatment[1] are eligible for early release under 18 U.S.C. § 3621(e). See 28 C.F.R. § 550.58). Inmates are eligible for early release if they were sentenced for a nonviolent offense and successfully complete all three components of the RDAP during their current incarceration. Id. Therefore, inmates, who are ineligible for community-based treatment, including those who are Immigration and Customs Enforcement detainees, do not receive consideration for early release, regardless of whether they complete a substance abuse treatment program. See 28

---

[1]As part of the comprehensive drug abuse treatment services available to the inmate population, in addition to the RDAP, which is available at a limited number of facilities, the BOP also provides the Drug Abuse Education Course ("DRUG ED") and the Non-residential Drug Abuse Treatment Program at every institution. See 28 C.F.R. §§ 550.54, 550.55.

C.F.R. § 550.55(b)(1).

## II. Petitioner's Factual and Procedural History

On October 11, 2002, the petitioner was arrested in Columbia, pursuant to an extradition agreement between the United States and Columbia. (Doc. 19-2, p. 2). On October 14, 2011 the petitioner was extradited to the United States. (Id.).

On January 22, 2004, the petitioner pleaded guilty in the United States District Court for the Eastern District of Texas to a violation of 21 U.S.C. § 846 "Conspiracy to Possess with Intent to Distribute Heroin and Cocaine." On July 29, 2004, the petitioner was sentenced to a one hundred sixty month term of imprisonment to be followed by five years of supervised release. The Judgment recommended to the BOP that the "defendant be incarcerated in an institution with the appropriate security level that provides an evaluation and/or treatment for substance abuse and near Dublin, CA if available and defendant is eligible." Case 4:02-cr-00074-MHS-DDB, Eastern District of Texas (Doc. 33, p. 2). The Judgment further provided that:

> As a condition of supervised release, immediately upon release from confinement, the defendant shall be surrendered to a duly authorized immigration official for deportation proceedings in accordance with the established procedures provided by the Immigration and Nationality Act, 8 U.S.C. 1101, et. seq. If ordered deported, the defendant shall remain outside the United States. In the event the defendant is not deported, the defendant shall comply with all conditions of supervised release.

(Id. at p. 4).[2]

On August 26, 2004, the petitioner was designated to FCI Dublin.(Doc. 19-6, p.6). At FCI Dublin, she was identified for referral and evaluation for the Residential Drug Abuse Treatment Program ("RDAP"). As part of the program coordinator's screening of the petitioner's eligibility for

---

[2] Available on PACER.

RDAP, a request was sent to the unit team for an "Instant Offense Determination." On July 20, 2005, the program coordinator determined that the petitioner was ineligible for early release under 18 U.S.C. § 3621 because she was an INS detainee.[3] (Doc. 19-7, p.2). On August 2, 2005, the unit team's Offense Determination concluded that the petitioner's instant offense was not a crime that excluded her from early release under 18 U.S.C. § 3621. (Doc. 19-8, p. 1). However, the Unit Team Determination also recorded that the petitioner was an INS Detainee subject to an INS detainer.

The petitioner was approved for the RDAP and began the residential unit-based component of RDAP on September 1, 2005, and successfully completed component one on June 1, 2006. (Doc. (Doc. 19-7, p.1 ). On April 23, 20007, the petitioner was designated to the SFF Hazelton. (Doc. 19-6, p. 5). On June 5, 2007, the petitioner completed component two, the follow-up services to the unit-based component of the RDAP. (Doc. 19-7, p. 2). On October 11, 2007, an Amended Judgment was entered in the petitioner's criminal case to correct her sentence on remand. The Amended Judgment committed the petitioner to the custody of the BOP for a total term of 151 months after the Court granted her a two-level adjustment for safety valve eligibility. The only recommendation made to the BOP was that the petitioner be incarcerated at a facility at or near the Dallas/Fort Worth area, if eligible. See Case No.. 4:02-cr-00074-MHS-DDB, Doc. 45). Upon release, the petitioner was again subject to a supervised release term of 5 years. In addition, like in the original Judgment, as a condition of supervised release, immediately upon release, the petitioner was directed to surrender to a duly authorized immigration official for deportation proceedings. (Id. at 4). On July 21, 2008, ICE lodged its detainer for possible deportation. (Doc. 24-7, p. 1). On March 30, 2009, the

---

[3]"INS" is the Immigration and Naturalization Service, which was dissolved in 2003. Now, the United States Immigration and Customs Enforcement ("ICE") handles enforcement and investigation related to immigration matters.

petitioner completed DRUG ED. (Doc.19-7, p. 1). The petitioner has not completed component three of the RDAP, the community TDAT component, and she will not be able to participate in that component because she is not eligible for RRC placement as a result of the ICE detainer. See 28 C.F.R. §§ 550.55 (b)(1), 550.58(a)(i)(v).

### III. Contentions of the Parties

**A. The Petitioner**

In her original pleading filed in the Eastern District of Texas, the plaintiff indicated that she was filing a Motion under Section 2255 for modification of sentence. More specifically, she requested that the court modify her sentence downward by 12 months. In support of her motion, the petitioner noted that she was ordered by the court to take the RDAP. She also noted that she successfully completed the RDAP program at FCI Dublin. Despite expecting her nine month minimum to 12 month maximum adjustment to her sentence, the petitioner alleged that the BOP refuses her any modification because she is not a United States Citizen. The petitioner argued that she had a "sentencing contract" with the United States which affirmed to her that she would be awarded a "time reduction" upon completion of the RDAP. In conclusion, the petitioner alleged that she specifically performed her end of the contract and rightfully expected the benefit of her bargain. Accordingly, she requested the Court enforce the contract between herself and the United States of America and modify her sentence up to one year.

As previously noted, the Eastern District construed the petition as Section 2241 petition challenging the method in which her sentence is being executed. Accordingly, because the petitioner is incarcerated within this Court's jurisdiction, the case was transferred here. The undersigned notes that because the petitioner did not comply with the Notice of deficient Pleading and file a form 2241

petition with the proscribed time period, a Show Cause Order was issued. (Doc.10). The petitioner responded to that Order by indicating that she is not requesting habeas relief she is requesting a sentence modification. However, despite noting that the 2241 petition says not to use for a 2255 modification, she completed the form and attached it as an exhibit. In the 2241 petition, she again notes that she took the RDAP in Dublin, California and has not been given the nine months credit pursuant to the BOP rules and rulings by the 9th Circuit. Moreover, the petitioner indicates again that the BOP said no to granting her credit because she is not a U.S. Citizen even though the 9th Cir. permits violent offenders with guns the time off. For relief, she indicates that she wants the Court to credit her with nine months off her 151 month sentence for successful completion of the 500 hour RDAP program.

**B. The Respondent**

In the response, the Respondent first asserts that 18 U.S.C. § 3625 precludes judicial review of the BOP's substantive determination of the petitioner's eligibility for early release. In addition, the respondent argues that the petitioner does not have a liberty interest in community confinement, drug treatment programs or early release. Finally, the respondent agues that the petitioner has failed to exhaust her administrative remedies.

### IV. Analysis

**A. Exhaustion**

In the response to the petition, the respondent argues that under the PLRA, "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e). The respondent then cites several

cases in which the Supreme Court and the Fourth Circuit Court of Appeals have held that under the PLRA, Congress has mandated the proper completion of any prison administrative remedy process capable of addressing an inmate's complaint and providing some form of relief prior to filing suit in federal court. See Porter v. Nussle, 534 U.S. 516 (2002); Booth v. Churner, 531 U.S. 956 (2001); Anderson v. XYZ Prison Health Services, Inc., 407 F.3d 674 (4th Cir. 2005). In addition, the respondent notes that the Fourth Circuit has applied these same principles to petitions for writ of habeas corpus. See Ingram v. Dove, 38 F.3d. Appx. 186 (4th Cir. 2002)(affirming dismissal of claims brought through § 2241 petition for failure to exhaust administrative remedies..

While the undersigned does not dispute that the PLRA mandates the exhaustion of administrative remedies, or that similar principles have been applied in habeas corpus actions, the respondent's argument misses the mark. The requirements of the PLRA are applicable to civil suits in which a prisoner challenges the conditions of his confinement, not habeas proceedings challenging the execution of a sentence under 28 U.S.C. § 2241. See LaRue v. Adams, 2006 WL 1674487 *5 - *7 (S.D.W.Va. June 12, 2006) (citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir.) cert. denied, 521 U.S. 1131 (1997)).[4]

Moreover, to the extent that exhaustion has been applied to habeas corpus, such a

---

[4] In LaRue, the Southern District of West Virginia noted that the purpose of the PLRA was to curtail the filing of frivolous prisoner civil rights actions. LaRue 2006 WL 1674487 at *7. In addition, the Court found it significant that Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) nearly simultaneous with the PLRA and that under the AEDPA Congress established separate procedures for addressing abusive habeas filings. Id. Moreover, the Court found that habeas actions were not typical civil actions because they involve someone's liberty, rather than claims of mere civil liability. Id. The Southern District cited several other district and circuit court cases that have also come to the conclusion that the PLRA and its exhaustion requirements are not applicable to habeas corpus proceedings. Id. (listing cases). The undersigned agrees with the reasoning of the Southern District of West Virginia and finds that a prisoner's challenge to the execution of his sentence under § 2241 is not subject to the PLRA's exhaustion requirements.

8

requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially imposed. Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances. See Larue. at *8 (recognizing that several circuit and district courts have found that the exhaustion requirements may be waived under § 2241 and noting that although the Fourth Circuit has not directly addressed this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions).

Here, it is not disputed that the petitioner failed to exhaust her administrative remedies prior to filing this action. However, this case has been served, a response has been filed and the matter is ripe for review. Therefore, to dismiss this case for the failure to exhaust at this juncture of the litigation would be a waste of judicial time and resources. Accordingly, the undersigned recommends that exhaustion be waived and this case proceed to a determination on the merits.

**B. 18 U.S.C. § 3625**

Sections 3621(b) and (e) clearly state that determining which prisoners are eligible for substance abuse treatment is within the sole discretion of the BOP, as is the decision to reduce a prisoner's sentence by up to one-year upon the successful completion of such programs. Moreover, pursuant to 18 U.S.C. § 3625, Congress has specifically excluded these subsections from judicial review under the Administrative Procedures Act ("APA"). See Davis v. Beeler, 966 F.Supp. 483, 489 (E.D.Ky. 1997). Section 3625 states: "[t]he provisions of section 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or

9

order under this subchapter."[5]

Accordingly, any substantive decision by the BOP to grant or deny admission into the RDAP, or regarding eligibility to receive up to a one-year sentence reduction, is not reviewable by this Court. However, where judicial review under the APA is specifically excluded by statute, the United States Supreme Court has found that two questions are still appropriate for the Court's review. Davis v. Beeler, 966 F.Supp. at 489. The first question is whether any cognizable constitutional claim has been presented. See Webster v. Doe, 486 U.S. 592 (1988)). The second question is whether an agency's interpretation of a statute is contrary to well-settled law. See Neal v. United States, 516 U.S. 284 (1996)).

In this case, the petitioner has not alleged that the BOP has acted unconstitutionally. The undersigned recognizes that with respect to the RDAP program, the most commonly advanced theory is denial of due process. However, even if the plaintiff had alleged a denial of due process, it is well established that in order to demonstrate a due process violation, a petitioner must show that she was deprived of a liberty or property interest protected under the Fifth Amendment. Greenholtz v. Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1, 7 (1979). However, the Supreme Court has made it quite clear that a prisoner has no constitutional or inherent right in being released before the completion of a valid sentence. Id.; see also Sandin v. Conner, 515 U.S. 472, 484 (1995). In fact, directly on point with this case, several courts, including this one, have found that there is no protected liberty interest in discretionary early release under 18 U.S.C. § 3621(e) for completion of the RDAP. See Cook v. Wiley, 208 F.3d 1314, 1322-23 (11th Cir. 2000); Venegas v. Henman, 126

---

[5] Pursuant to 5 U.S.C. §§ 701 and 702, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action with the meaning of a relevant statute is entitled to judicial review thereof," except to the extent that a statute precludes judicial review.

F.3d 760, 765 (5th Cir. 1997); Jacks v. Crabtree, 114 F.3d 983, 986 n. 4 (9th Cir. 1997); Fonner v. Thompson, 955 F.Supp. 638, 642 (N.D.W.Va. 1997).

In addition, as noted above, 18 U.S.C. § 3621(e)(20(B) contains discretionary language; the BOP's regulations expressly provide that inmates subject to Immigration and Custom detainees are ineligible for a sentence reduction. Clearly, the BOP's exclusion of ICE detainees is rationally related to the legitimate governmental interest of preventing ICE detainees from fleeing. See McClean v. Crabtree, 173 F.3d 1176 (9th Cir. 1999), Carranza v. Medellin, 252 F.3d 1256 (5th Cir. 2001); Rubilee v. Fleming, 160 F.3d 213, 217 (5th Cir. 1998); Andrew v. Andler, 2010 WL 3768133 (E.D. Cal. Sept. 22, 2010).

Accordingly, the petitioner's ineligibility for the TDAT or other RRC programs and for the up to one-year sentence reduction does not violate the terms of the statute authorizing the RDAP.

## V. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss, Motion for Summary Judgment (Doc. 17) be **GRANTED**, and the petitioner's § 2241 petition be **DENIED and DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made and the basis for such objections. A copy of such objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985);

United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to her last known address as reflected on the docket sheet and to counsel of record by electronic means.

DATED: April 19, 2012

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE